UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA

      -against-                                              No. 13 Cr. 297 (KMK)

MALCOLM A. SMITH,
DANIEL J. HALLORAN, and
VINCENT TABONE,

                  *Defendants*.
------------------------------------------------------------------X

# **DEFENDANT MALCOLM A. SMITH'S MOTIONS IN LIMINE**

 

Gerald L. Shargel
Ross M. Kramer
Evan L. Lipton
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166

*Attorneys for Malcolm A. Smith*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...................................................................................................................................1

       POINT ONE: The Government Should Be Ordered to Produce Additional Rule 16 Discovery Necessary to the Preparation of an Entrapment Defense ...............................................1

            FACTS .................................................................................................................................2

            ANALYSIS ..........................................................................................................................4

       POINT TWO: Daniel Halloran's Unfairly Prejudicial Statements About Corruption in Politics
Should be Excluded .........................................................................................................................7

       POINT THREE: Recorded Conversations Relating to Hidden Recording Devices Should be Excluded.........................................................................................................................................9

       POINT FOUR: Conversations Between Stern and Robert Calentine Should be Excluded 11

       POINT FIVE: Recorded Conversations Between Malcolm Smith and Shirley Huntley are Admissible .....................................................................................................................................12

CONCLUSION ..............................................................................................................................14

# **TABLE OF AUTHORITIES**

## **CASES**

Mathews v. United States, 485 U.S. 58 (1988)..................................................................................1

United States v. Alexander, No. 11 Cr. 148, 2014 WL 64124 (N.D. Ill. Jan. 8, 2014)..................12

United States v. Cromitie, 727 F.3d 194 (2d Cir. 2013).................................................................1

United States v. Dambruck, No. 06 Cr. 3949, 270 Fed. Appx. 30 (2d Cir. Mar. 19, 2008)..........11

United States v. Doe, 705 F.3d 1134 (9th Cir. 2013) ................................................................2, 5

United States v. Farhane, 634 F.3d 127 (2d Cir. 2011) ...............................................................12

United States v. Ferguson, 246 F.R.D. 107 (D. Conn. 2007) .....................................................8, 9

United States v. Franco, 48 F.3d 347 (6th Cir. 2007)...................................................................13

United States v. Halgat, No. 13 Cr. 241, 2014 WL 1612686 (D. Nev. Apr. 22, 2014)...............6, 7

United States v. Jannotti, 673 F.2d 578 (3d Cir. 1982) ................................................................13

United States v. Pesaturo, 519 F. Supp. 2d 177 (D. Mass. 2007)....................................................6

United States v. Reed, No. 10 Cr. 10254, 459 Fed. Appx. 664 (9th Cir. Nov. 23, 2011) .............13

United States v. Thomas, 134 F.3d 975 (9th Cir. 1998)...............................................................13

## **STATUTES AND RULES**

Fed. R. Crim. P. 16(a)(2) ................................................................................................................6

Fed. R. Evid. 403 ............................................................................................................................8

Fed. R. Evid. 405(a)......................................................................................................................13

Fed. R. Evid. 405(b)......................................................................................................................13

**INTRODUCTION**

This memorandum of law is respectfully submitted in support of Malcolm Smith's motions *in limine*: (I) for the Court to order the government to produce additional Rule 16 discovery necessary to the preparation of an entrapment defense; (II) to exclude Daniel Halloran's unfairly prejudicial statements about corruption in politics; (III) to exclude conversations relating to hidden recording devices; (IV) to exclude as inadmissible hearsay recorded conversations between the government's cooperating witness and Smith's Director of Finance; and (V) to admit recorded conversations between Smith and Shirley Huntley.

**ARGUMENT**

**POINT ONE**

**The Government Should Be Ordered to Produce Additional Rule 16 Discovery Necessary to the Preparation of an Entrapment Defense**

Malcolm Smith intends to pursue an entrapment defense at trial. We anticipate arguing at trial that any offense conduct in this case was wholly the result of government inducement, and Smith had no predisposition to engage in any criminal conduct. See United States v. Cromitie, 727 F.3d 194, 204 (2d Cir. 2013). **Smith absolutely denies that he committed any of the charged offenses**. An entrapment instruction is nevertheless appropriate here, because at trial there will be "sufficient evidence from which a reasonable jury could find entrapment." See Mathews v. United States, 485 U.S. 58, 62 (1988) ("We hold that even if the defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment.")

Because Smith intends to pursue an entrapment defense, the government should be ordered to produce additional Rule 16 discovery of evidence "material to preparing the defense." See United States v. Doe, 705 F.3d 1134, 1151 (9th Cir. 2013).

**FACTS**

On April 26, 2012, Malcolm Smith was introduced to government cooperator Mark Stern, the "CW" in the Indictment. (Gov't Exhibit 101-T.) At that meeting, Smith told Stern that he was considering running for New York City Mayor. From that point forward, Stern and an undercover FBI agent repeatedly offered to assist Smith in obtaining Wilson Pakula certificates, which would allow Smith to run for Mayor as a Republican Party candidate.[1]

At a meeting on February 10, 2013, Stern and the undercover agent for the first time informed Smith that they planned to pay cash bribes to obtain the Wilson Pakula certificates. (Gov't Exhibit 122-T.) Stern and the undercover agent told Smith that they had "a number" from each of the Republican County Committee Chairmen, and that the total would "be in the range of, say, two hundred grand." They told Smith that they planned to pay "about fifty each" with "half up front." The undercover agent stated:

> UC: We're going to do it in a way that there's no ties to me. You mean – we're going to go play golf somewhere, and your, your golf bag will be a little heavier when you, when you leave the course.
>
> \*\*\*
>
> UC: I'll lose a couple of bets to you, we'll go to Vegas, and you'll cash in some chips, whatever. An envelope, you know? (Gov't Exhibit 122-T at 15.)

---

[1] Smith was not changing party affiliation. He is a registered Democrat who was seeking to run for Mayor as a Republican with bi-partisan support.

2

This criminal plan was wholly devised, initiated, planned and suggested by the government agents, and presented to Smith fully formed.

Smith objected to the unlawful actions suggested by the government agents. Indeed, he told Stern and the undercover agent unequivocally that they would have to proceed in "a legal and legitimate way" with regard to the Wilson Pakula certificates:

> Smith: So the question becomes, I'm telling you there is a legal and legitimate way what you're doing is fine. You just got to make sure that, you know, you're doing this – let's just say for instance, you have a business arrangement with all five of them, and you're doing business with them. That's none of my business.
>
> \*\*\*
>
> Smith: That's none of my business. And what you do with them as a business relationship, that's none of my business. But if, if any part of that exchange relates to the campaign, it's got to get reported and it's got to be shown. So, that's what I'm saying. So, if you're, if you're saying to me, well, Malcolm, I mean, I understand we talked about the five of them, but if you say to them, Craig, you know, you're a lawyer, I'm retaining you. Ragusa, you're an accountant, I'm retaining you, here's my fee. That's your business. (Gov't Exhibit 122-T at 25.)

Smith left the meeting on February 10, 2013 believing that he had instructed Stern and the undercover agent to advocate on his behalf to obtain Wilson Pakula certificates only in "a legal and legitimate way." That they may have proceeded to act differently is immaterial, and was outside of Smith's knowledge or control. He had definitively demonstrated that he lacked the predisposition to engage in any unlawful conduct that Stern and the undercover proposed.

3

## ANALYSIS

Based on the facts set forth above, Malcolm Smith can establish a valid entrapment defense in this case. "[A] valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in criminal conduct." Cromitie, 727 F.3d at 204 (quoting Mathews, 485 U.S. at 63). "The defendant has the burden of showing inducement, and, if inducement is shown, the prosecution has the burden of proving predisposition beyond a reasonable doubt." Cromitie, 727 F.3d at 204.

Here, there was clearly inducement by government agents (Stern and the undercover FBI agent). "[A] defendant hoping to assert the entrapment defense bears the burden of establishing inducement by a preponderance of the evidence." United States v. Brand, 467 F.3d 179, 190 (2d Cir. 2006) (citing United States v. Williams, 23 F.3d 629, 635 (2d Cir. 1994)). "To satisfy the 'relatively slight' burden, the defendant must demonstrate that 'the government initiated the crime.'" Brand, 467 F.3d at 190 (quoting United States v. Mayo, 705 F.2d 62, 67 (2d Cir. 1983)). "Judge Learned Hand wrote that inducement includes 'soliciting, proposing, initiating, broaching or suggesting the commission of the offense charged.'" Brand, 467 F.3d at 190 (quoting United States v. Sherman, 200 F.2d 880, 883 (2d Cir. 1953). "Or, put another way, a defendant must establish that '[it was] the prosecution [that] set the accused in motion[.]'" Brand, 467 F.3d at 190 (quoting Sherman, 200 F.2d at 883).

Here, the illicit plan to pay cash bribes in exchange for Wilson Pakula certificates was entirely generated by the government agents who presented it to Smith already fully formed.

Smith's refusal to participate in the government agents' plot when it was proposed to him on February 10, 2013 likewise demonstrates that he lacked predisposition to engage in criminal conduct.

Because Smith intends to pursue a valid entrapment defense, additional discovery should be ordered under Rule 16. Under Rule 16(a)(1)(E)(1), "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and … *the item is material to preparing the defense*." Fed. R. Crim. P. 16(a)(1)(E)(1) (emphasis added). When a defendant declares an intent to pursue an entrapment defense, documents "material to preparing" that entrapment defense properly fall under Rule 16(a)(1)(E)(i). See Doe, 705 F.3d at 1151 ("At the time of the request, Doe *was* preparing an entrapment defense. … Even if the documents caused Doe to completely abandon the entrapment defense and take an entirely different path, the documents would still have been 'material to preparing the defense' under Rule 16(a)(1)(E)(i).").

Under this standard, we request the following documents:

Request #1: All information contained in cooperating witness Mark Stern's government case file including, but not limited to: anything related to law enforcement's strategy and efforts to obtain evidence of criminal activity in relation to an investigation of Malcolm Smith, and the progress of that investigation; Stern's criminal record or history of criminal investigations; all communications with law enforcement regarding the investigation into Malcolm Smith and the progress of that investigation; the terms of Stern's agreement with the government, and a record of any benefits or payments received by Stern; notes memorializing any statements made by Stern to law enforcement in the course of the investigation; and Stern's phone records for the period of the investigation.

This information is material to preparing an entrapment defense in this case. Stern was the cooperating witness that, at the government's direction, targeted Smith with a plan to lure him into a criminal conspiracy. Stern spent nearly a full year (April 2012 through April 2013) attempting to induce Smith to engage in criminal conduct at the government's direction. Under similar circumstances, courts have ordered the production of such information. See, e.g., United States v. Halgat, No. 13 Cr. 241, 2014 WL 1612686, at *4-5 (D. Nev. Apr. 22, 2014); United States v. Pesaturo, 519 F. Supp. 2d 177, 190-92 (D. Mass. 2007). Records detailing Stern's background and his role in the government's investigation, including his repeated efforts to induce Smith to participate in the government's unlawful plan, are clearly material to the preparation of an entrapment defense in this case.

The government has informed us that it does not intend to call Stern as a witness at trial. Therefore, the requested documents do not fall under the umbrella of 18 U.S.C. § 3500.

Request #2: All records and documents in the undercover FBI agent's possession related to the investigation of Malcolm Smith that were not "made by an attorney for the government or other government agent in connection with investigating or prosecuting the case," see Rule 16(a)(2), and the undercover agent's relevant phone records for the period of the investigation, including a record of all calls made to any phone number associated with Malcolm Smith or Mark Stern.

This information is material to preparing an entrapment defense in this case. The undercover agent, like Stern, was integral in a year-long effort to lure Smith into a criminal conspiracy. His efforts during the investigation to repeatedly contact and induce Smith are clearly relevant to an entrapment defense. The records and documents relevant to the

6

investigation that are in the agent's possession should be produced, to the extent that they fall outside the limited restriction of Rule 16(a)(2).  See Halgat, 2014 WL 1612686, at *7.

# POINT TWO

### Daniel Halloran's Unfairly Prejudicial Statements About Corruption in Politics Should be Excluded

Two statements by co-defendant Daniel Halloran about political corruption in New York should be excluded because their introduction at trial would be unfairly prejudicial to Malcolm Smith.

Under Rule 403 of the Federal Rules of Evidence, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one … unfair prejudice."  Fed. R. Evid. 403.

On September 7, 2012, Halloran met with government cooperating witness Mark Stern; Smith was not present.  During that recorded conversation, Halloran made two statements offering his personal, generalized, and highly prejudicial opinion that New York politics and politicians are inherently corrupt.

First, Halloran stated:

Halloran: That's politics, that's politics, it's all about how much.  Not about whether or will, it's about how much, and that's our politicians in New York, they're all like that, all like that.  And they get like that because of the drive that the money does for everything else.  You can't do anything without the f**king money.

Second, later in the same conversation the following statement was made:

Stern: Money is what's...

Halloran: What greases the wheels, good, bad or indifferent. But, yeah, no, no absolutely.

7

Halloran's statements would have an unfairly prejudicial impact on Smith if the government were allowed to present them at trial. In fact, Halloran's first statement was singled out and directly quoted in the Executive Summary of the Preliminary Report of The Commission to Investigate Public Corruption of the State of New York, dated December 2, 2013 (commonly known as the Moreland Commission Report). The Report opines on Halloran's statement by asserting that:

> Without a doubt, sorrier words have never been spoken about 'our politicians in New York.' To be sure, these words are overkill, and there are many honest and well-intentioned public officials in this State who serve well and admirably. But, as is clear already from the Commission's ongoing investigations, the system itself truly is 'all about how much.'

Halloran's statements have little or no probative value, and any probative value would be substantially outweighed by the unfair prejudice to Smith if they were introduced at trial. See Fed. R. Evid. 403. In those statements, Halloran does nothing more than "speculate about the full extent" of corruption in New York State politics. See United States v. Ferguson, 246 F.R.D. 107, 119 (D. Conn. 2007). The statements "are not probative to show" that the actual scheme charged in this case occurred, or that Smith was involved in any form of corruption. See id. To the extent that the statements discuss corruption generally, "they are highly prejudicial" to Smith, a long-time New York politician, "because they imply" that New York politics is corrupt, and that New York politicians are corrupt and act only in exchange for illicit payments of money. See id.

Because Smith would be "unduly prejudiced through guilt by association" if Halloran's opinion on New York politics were introduced at trial, Halloran's statements should be excluded. See id.[2]

## POINT THREE

### Recorded Conversations Relating to Hidden Recording Devices Should be Excluded

Recorded conversations relating to hidden recording devices used by the government in this case should be excluded as unfairly prejudicial.

Under Rule 403 of the Federal Rules of Evidence, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one … unfair prejudice." Fed. R. Evid. 403.

On August 22, 2012, Mark Stern and an employee of Smith entered a room at the Regency Hotel. They interrupted (what we believe to be) government agents planting a recording device in the room. They subsequently discussed their observations of the event, and how strange and suspicious it was.[3] This was all recorded, and the recording was produced by the government in discovery. Shortly thereafter, Smith and Stern met in the same hotel room. Discussion turned to the preceding event and its suspicious nature. (Gov't Exhibit 103-T at 18-

---

[2]  In the alternative, we move for severance under Rule 14(a) of the Federal Rules of Criminal Procedure. Introduction of Halloran's statements about the nature of New York politics and politicians, generally, would be so prejudicial that Smith would be unable to obtain a fair trial. See Fed. R. Crim. P. 14(a) ("If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.").

[3]  The initial event and discussion are not currently included in the government's exhibits. To the extent that the government may at any time seek to play this portion of the August 22, 2012 recording at trial, we move for its exclusion.

9

20.) That same evening, Stern called Smith to again discuss the event. (Gov't Exhibit 204-T.)

The call included the following dialogue, all instigated by Stern:

> Stern: Hi Senator?
>
> Smith: Hey how are you?
>
> Stern: Hi okay.
>
> Smith: Good.
>
> Stern: I just, just, I was, your guy is very good. He's more, he made me paranoid. I called them up again and one of the security guards, the one that is the maintenance man, the same guys came up again.
>
> Smith: Right.
>
> Stern: Yeah so I, I think, I think it's okay. No?
>
> Smith: Yeah yeah fine.
>
> Stern: Well what did he think?
>
> Smith: Who my guy?
>
> Stern: Yeah.
>
> Smith: Nothing … he thought it was just a maintenance guy, he didn't think anything of it.
>
> Stern: Oh, I did make something, I'm like paranoid, so I called them back up and showed up, one is a security guy one is a maintenance guy.
>
> Smith: Maintenance guy yeah yeah. Yeah no, he didn't think anything of it.
> (Gov't Exhibit 204-T at 1-2.)

The entire event and the discussion surrounding it was manufactured by the government, is irrelevant to the charged offense, and is unfairly prejudicial. It only became an issue for discussion because Stern and Smith's employee interrupted government agents in the act of planting recording devices (while posing as maintenance workers). Subsequent discussion of the event was generated by Stern himself, who continued to discuss it (presumably to make sure that Smith did not find it overly suspicious, or catch on to the fact that he was being surreptitiously

recorded). The entire event and its aftermath – including discussion of "suspicion" and "paranoia" – generate an unfairly prejudicial atmosphere on the recordings that can in no way be attributed to Smith. None of the discussion is relevant to the offense conduct. Any recorded conversation relating to hidden recording devices used by the government in this case should be excluded as unfairly prejudicial under Rule 403.[4]

## POINT FOUR

### Conversations Between Stern and Robert Calentine Should be Excluded

The government seeks to admit a recorded phone call between Stern and Smith's Director of Finance, Robert Calentine. (Gov't Exhibit 206-T.) Because Calentine is not a co-conspirator in this case, that recording should be excluded, as should any testimony about any conversation involving Calentine and government agents where Smith was not present.[5] See United States v.

---

[4] Another discussion of wires, hidden recorders, and paranoia occurred during a recorded conversation on September 12, 2012. Present were Smith, Stern and the undercover FBI agent. Discussion included, for example, Stern and the undercover joking about wearing recording devices:

> Stern: It just became quiet … Let me not talk, I'm not gonna say anything. Are you my friend?
>
> UC: Let me take off that …
>
> Smith: Absolutely, absolutely.
>
> Stern: I'm scared now.
>
> UC: Yeah, let me take off all the recorders.

This discussion is not currently included in the government's exhibits. To the extent that the government may at any time seek to play this portion of the September 12, 2012 recording at trial, we move for its exclusion. As with the conversations on August 22, 2012, it has no relevance to the charged offenses, and is unfairly prejudicial.

11

Dambruck, No. 06 Cr. 3949, 270 Fed. Appx. 30, at *34 (2d Cir. Mar. 19, 2008) ("Because the informant was not a co-conspirator and the statement does not otherwise fall under a hearsay exception, the district court erred by admitting this statement."); see generally United States v. Farhane, 634 F.3d 127, 161 (2d Cir. 2011) ("To admit an out-of-court declaration under [Rule 801(d)(2)(E)], the district court must find by a preponderance of the evidence '(a) that there was a conspiracy, (b) *that its members included the declarant* and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy.'") (emphasis added).

## POINT FIVE

### Recorded Conversations Between Malcolm Smith and Shirley Huntley are Admissible

Recorded conversations between Malcolm Smith and former State Senator Shirley Huntley are admissible in this case under Rule 405(b) because Smith intends to raise an entrapment defense at trial. Those recorded conversations demonstrate that Smith had no predisposition to engage in any criminal conduct.

"[I]f the Court determines that Defendant has properly raised an entrapment defense, Rule 405(b) allows him to show his lack of predisposition through evidence of specific instances of lawfulness and prior good acts, as long as the evidence he seeks to admit meets the other requirements for admissibility." United States v. Alexander, No. 11 Cr. 148, 2014 WL 64124, at

---

[5] In discovery, the government produced a total of 9 recorded conversations between Stern and Calentine where Smith was not present. Those recordings are dated September 11, 2012; October 3, 2012; October 5, 2012; October 10, 2012; October 23, 2012; January 23, 2013; February 20, 2013; March 7, 2013; and March 8, 2013. Although only the October 3, 2012 recorded conversation has been identified as a government exhibit (Gov't Exhibit 206-T), all of those recordings should be inadmissible. In addition, the government produced numerous text messages between Stern and Calentine. Those messages should likewise be inadmissible.

\*9 (N.D. Ill. Jan. 8, 2014) (citing United States v. Thomas, 134 F.3d 975, 979-80 (9th Cir. 1998)).

On or about May 3, 2013, federal prosecutors in the Eastern District of New York "disclosed that Shirley L. Huntley, when she was a Democratic state senator from Queens, had secretly recorded conversations with seven elected officials and two other people after she was confronted by the F.B.I. and asked about her alleged participation in criminal schemes involving embezzlement and bribery." (Exhibit A, Thomas Kaplan and William K. Rashbaum, Second Albany Legislator Secretly Taped Colleagues, N.Y. Times, May 3, 2013.) One of those elected officials was Malcolm Smith. Recordings of two conversations between Huntley and Smith were provided by the government in discovery.

On those recordings, Huntley proposed various unlawful acts in which she hoped to ensnare Smith. Each time, Smith rejected her criminal overtures. Those specific instances of Smith's conduct demonstrating a lack of predisposition are admissible at trial here. See United States v. Reed, No. 10 Cr. 10254, 459 Fed. Appx. 664, at \*\*1 (9th Cir. Nov. 23, 2011) (citing Fed. R. Evid. 405(b) for the proposition that when an entrapment defense is raised, "the Federal Rules of Evidence allow proof to be made by specific instances of that person's conduct."); United States v. Franco, 48 F.3d 347, 352 (6th Cir. 2007) ("Because predisposition is relevant to entrapment, such character evidence was an essential element of Franco's defense, and therefore, these specific instances of his conduct were admissible."); United States v. Jannotti, 673 F.2d 578, 621 (3d Cir. 1982) ("Rule 405(a) permits proof of character by testimony as to reputation or by testimony in the form of an opinion; and because predisposition is an essential element of the entrapment defense, Rule 405(b) permits proof of specific instances of conduct.")

## CONCLUSION

For the reasons set forth above, we respectfully submit that Malcolm Smith's motions *in limine* should be granted.

Dated: New York, NY
      May 16, 2014

                                                  /s/ Gerald Shargel, RMK
                                       Gerald L. Shargel
                                       Ross M. Kramer
                                       Evan L. Lipton
                                       Winston & Strawn LLP
                                       200 Park Avenue
                                       New York, NY 10166

                                       *Attorneys for Malcolm A. Smith*