

**WINSTON & STRAWN LLP**

North America    Europe    Asia

200 Park Avenue
New York, NY 10166
T +1 212 294 6700
F +1 212 294 4700

GERALD L. SHARGEL
212-294-2637
GShargel@winston.com

December 29, 2014

**BY ECF**
The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      Re: United States v. Malcolm Smith et al.,
         No. S2 13 Cr. 297 (KMK)

Dear Judge Karas:

  I write on behalf of Malcolm Smith to respectfully move for an *in limine* ruling that FBI Agent William McGrogan can be questioned on cross-examination regarding: (1) the fact that he gave instructions to government cooperator Mark Stern in advance of each of Stern's meetings with Smith; and (2) what instructions he provided.

  On June 3, 2014, Agent McGrogan testified at the first trial in this case. He was asked the following questions and gave the following answers:

> Q: Did you see Mark Stern earlier in that day, before you arrived on the set, as it's called? You know what I mean when I say the set, right?
> A. The meeting location?
> Q. Yes.
> A. Yeah. Typically we wouldn't meet him there. We would probably meet somewhere nearby to activate the recording device and provide, whether it be Mr. Stern or anyone else, the recording device.
> Q. Well, there's something else that you would do at that location some distance from the set, right?
> A. I don't understand what you're referring to.
> Q. Well, one or more FBI agents, whether it included you or whether you overheard it, were giving instructions – instructions – to Moses Stern, right?
> A. Typically, yes.
> (Tr. 286:19-287:10)

  * * *

**WINSTON**
**& STRAWN**
LLP

Hon. Kenneth M. Karas
December 29, 2014
Page 2

> Q: My question to you is this. My question to you is that, before you turned the recorder on, were you present when either yourself or -- obviously you have to be present if it's you, right -- or any brother or sister agent gave or furnished instructions to Moses Stern about how he was to conduct himself at this meeting with Senator Smith?
> A: I don't recall it specifically, but I'm fairly certain that happened, yeah.
> (Tr. 289:3-10)

\* \* \*

> Q: And my question to you, based on your tenure with the FBI, the person who is going to capture -- secretly capture conversations is instructed how to act and what to say, essentially, right? I don't mean word for word.
> A: Yeah. It's very difficult to say word for word, but there is a general idea of what may be discussed and how you can respond or react.
> (Tr. 289:21-290:2)

On June 11, 2014 (after McGrogan testified), the Court ruled that the issue of "motive" was inadmissible as it related to either the government or a government agent. (Transcript at 870-876.) Although we wish to preserve our objection on that point, we will abide by the Court's ruling at the upcoming trial. We do not intend to pose any question about "why" Malcolm Smith was targeted by the government or Stern.

We believe, however, that we should be permitted to inquire as to "how" the government pursued its investigation. The government's methods are relevant to the entrapment defense that we intend to raise at trial. The fact that Stern was provided with instructions in advance of each meeting, and what those instructions were, are part of demonstrating government inducement. In raising an entrapment defense, it is the defendant's burden to establish government inducement, United States v. Brand, 467 F.3d 179, 190 (2d Cir. 2006), and we would choose to do so in part through cross-examination of Agent McGrogan. Cross-examination would show that the government literally directed Stern to raise certain issues and record conversations with Malcolm Smith in which Stern proposed taking unlawful action. This is relevant and necessary to prove inducement. The methods that Stern was instructed to use, and the way that Stern was instructed to conduct himself in the meetings with Smith, we respectfully submit, are relevant to proving entrapment. Jurors should not be misled into believing that Stern was acting on his own, or without instruction from the government.

The fact that Agent McGrogan met with Stern before each meeting to provide instructions is also relevant as background to the entrapment defense, and limited questioning on this issue should be admitted as a matter of fundamental fairness. The government has argued for the admissibility of numerous pieces of evidence for the purposes of demonstrating the "background" to the meetings at issue in this case and the "relationships" between the parties, and because that evidence provides necessary "context for the subsequent conversations that are

WINSTON
&STRAWN
LLP

Hon. Kenneth M. Karas
December 29, 2014
Page 3

at the core of the charged offenses." (See, e.g., Gov't Motions In Limine dated November 26, 2014 (Docket No. 328) at 2, 10, 14-21.) In the context of an entrapment defense, the defendant carries the burden of proving inducement. In doing so, we strongly believe – in line with the government's repeated requests – that a limited amount of "background evidence is necessary to provide context for the conversations that took place with Smith on and after November 16, 2012[.]" (See id. at 17.) We intend to demonstrate at trial that any illegality in this case was devised by the government, proposed by the government, and repeatedly and aggressively pushed on Smith by a government undercover agent and a government cooperator over the course of months. It is highly relevant – indeed crucial to demonstrating inducement and entrapment overall – that Stern was not acting alone and directionless in this case. He was acting at the explicit instruction of the government, and we should be able to demonstrate that through cross-examination of Agent McGrogan.

We are mindful of the case law cited by the Court on June 11, 2014, including United States v. Shields, No. 90 Cr. 1044, 1991 WL 236492, at *3 (N.D. Ill. Aug. 13, 1991). In Shields, the Northern District of Illinois held that "absent a compelling proffer and demonstration of relevance," defense counsel could not inquire "into any instructions the government may have given [its cooperating witness] or any other conversations [the government witness] may have had with government officials." We respectfully submit that under the facts of this case, and in the absence of binding authority in this Circuit to the contrary, instructions from the government to Stern in advance of Stern's meetings with Smith are demonstrably relevant.

Respectfully submitted,

Gerald L. Shargel
Winston & Strawn LLP
*Attorney for Malcolm Smith*

cc:    All counsel of record by ECF