Stuart H. Brody, Esq.
P.O. Box 127
Essex, New York 12936
___
(518) 963-7479
Fax (518) 963-7009

March 31, 2015

Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

Your Honor:

I am an attorney licensed to practice law in the Sate of New York. In the course of my career I've worked for several prominent law firms in New York State, including Phillips Nizer in New York City and Hiscock Barclay in Albany. During most of my career I was active in Democratic politics and held various leadership positions in the Democratic party.

In 2010, while still practicing law, I began teaching ethics in the Business School at SUNY New Paltz, and also started lecturing and training in the area of public ethics. From 2013-2014, I served as Ethics Officer for the New York State Department of Environmental Conservation. Since October 2014, I have been engaged full-time consulting with municipal officials nationally on the subject of public integrity.

I first met Senator Smith through politics. However, it was my background in transportation that brought me into close professional contact with him. In 2009, Senator Smith, as Senate President, hired me as a part-time counsel to the New York State Senate to advise on transportation matters, particularly high speed rail. I served nearly two years in that role and in 2011, I was appointed by the Governor to the New York State High Speed Rail Planning Board for a two-year term.

Based on the significant interaction I had with Senator Smith from 2009-2012, I can make several observations that I hope are helpful to the court.

The principal basis upon which I make my comments about Malcolm, is the manner in which he undertook advocacy for the high-speed rail movement in New York. He originated and almost single-handedly led the effort to initiate this innovation in our state.

It was a source of continuing surprise to me that a Senator from Queens would spearhead an effort with no direct benefit to his constituents, but he believed it was essential to the development of the state generally. I believe Malcolm was motivated by considerations far beyond his self-interest.

In his role as Chairman of the High Speed Rail Subcommittee of the National Conference of State Legislators, he advocated nationally for that initiative and I accompanied him on various missions around the country. He impressed every crowd with his eloquence, devotion and expertise. He was the face of high-speed rail in New York and, to a large degree, the entire country as well.

As both a political leader and attorney who spent years interacting with politicians, I can assert without hesitation that Senator Smith's forward-looking approach was singularly impressive, and the sincerity that marked his leadership, unique. He was a tireless and sincere advocate for causes that enhanced the well-being of his community generally.

In my opinion, Senator Smith also embodies characteristics of courtesy and respect that are exceptionally rare in politics. He is one of the few gentlemen I ever met in politics. He listened intently to people and never made derogatory personal comments about others—at least none that that I ever heard.

Not once in our association did I see him lose his temper with anyone, or utter cynical remarks about politics. He made you feel important the way politicians should but rarely do and was generous in his public acknowledgment of others. I can tell you that in my extensive experience in politics, I rarely saw this.

Although I have not followed his trial—it was surely painful to hear of these allegations and to learn that he was convicted of such a serious breach of the public trust—yet everything I have observed about Malcolm's public attitude and demeanor reflects respect for the law and the lofty profession he was privileged to serve.

I had been in the backrooms of politics for many years. I understand the abuses and the temptations to which its participants are susceptible. That understanding led me to a period of personal revaluation through my teaching, writings and lecturing about the meaning of integrity. I have come to understand through years of research, writing and teaching that a person's integrity is not a simple affair. Judgments cannot be made on one act alone because everyone both practices integrity and breaches it throughout the course of their lives and careers. It is not a prized possession that one possesses innately or achieves permanently. It is a dynamic process in which we both succeed and fail in the face of daunting challenges.

And this is why integrity, as I understand the term, encompasses both the duty to do justice, but also to do mercy. I submit that his offenses, as serious as they are, should be viewed in the context of a life of contribution. And ultimately, whatever justice may require here, its administration must comprise a due regard for mercy toward Malcolm. I can only pray that you feel the same way. I always felt Malcolm was a very good man—

I didn't feel that way about most men I met in politics—and I can only imagine the suffering, borne of regret, that he must now endure because of his errors.

Thank you very much for your consideration. I am, respectfully.

Stuart H. Brody, Esq.